UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTONIETTA CARUANA,

                              Plaintiff,

v.                                                        6:01-CV-0262
                                                          (GHL)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

BOND & MCDONALD, P.C.                       MARK M. MCDONALD, ESQ.
Attorneys for Plaintiff
91 Genesee Street
Geneva, New York 14456

HON. GLENN T. SUDDABY                       WILLIAM H. PEASE, ESQ.
United States Attorney for the              Assistant United States Attorney
  Northern District of New York
Attorney for Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## DECISION AND ORDER[1]

     Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) to challenge a final

decision of the Commissioner of the Social Security Administration ("Commissioner") with

respect to plaintiff's Social Security Disability Benefits.  Dkt. No. 1.  That decision was partially

favorable to plaintiff, finding her disabled as of October 8, 2000 (when she became forty-five

years old), and awarding her benefits as of that date.  Plaintiff contends, however, that she was

_____

     [1]  The parties consented, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of
Civil Procedure, to the exercise of jurisdiction over this matter by a United State Magistrate Judge.  Dkt.
No. 2.  The matter was referred to the undersigned on February 12, 2004.  Dkt. No. 11.

disabled as of September 16, 1996, the date when she stopped working, and should receive benefits as of that earlier date.

The plaintiff has moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, with a request for remand to the defendant Commissioner solely for the calculation of benefits.  Dkt. No. 7.  The Commissioner has cross-moved for remand for further administrative proceedings, acknowledging that the Commissioner's Administrative Law Judge ("ALJ") failed to properly develop the record.  Dkt. No. 10.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on May 19, 1997.  (Administrative Transcript ("T") at 82-83.)  The application was denied initially and upon reconsideration.  (T. at 72-75, 78-80.)

Plaintiff requested a hearing before an ALJ which was held on February 11, 1999.  (T. at 47.)  On April 9, 1999, the ALJ issued a decision finding that plaintiff was not disabled.  (T. at 47-53.)  The Appeals Council denied plaintiff's request for review on December 15, 2000 (T. at 29-30), and plaintiff filed the instant action in this Court (Dkt. No. 1) on February 21, 2001.

Subsequently, however, the Appeals Council sought a voluntary remand for further administrative proceedings.  As a result, upon the filing of the parties' stipulation to remand on May 1, 2001, then Magistrate Judge Gary L. Sharpe remanded the matter for further proceedings.  Dkt. No. 3.  Significantly, in the context of the issue presently before this Court, the Appeals Council's remand order explicitly focused on the need for further testing and evaluation "in order to determine whether [plaintiff's] language limitations may impact on the IQ scores . . . ."  (T. at 247.)  A post-remand hearing was held on April 17, 2002.  (T. at 467-508.)  On July 30, 2002,

the ALJ issued the partially favorable decision that is now before the Court.

## II.  BACKGROUND

At the hearing before the ALJ plaintiff testified that she was born in Italy on October 8, 1955, and went to school there through the sixth grade.  According to her testimony she repeated the first grade four times and she was fifteen years old when she stopped attending school.  She lived in Italy for twenty-one years, until 1976, when she immigrated to the United States.

In 1995 the plaintiff began having pain in her heels.  Subsequently she was diagnosed as having plantar and posterior calcaneal heel spurs.  The ALJ found that the medical evidence established that the plaintiff had a "severe impairment[] . . . [of] bilateral heel spurs . . . ."  (T. at 14.)  Prior to her heel problem, plaintiff worked in a hospital as a housekeeper; previously she had done factory work.  (T. at 402.)  She stopped working because of the pain, and the ALJ found that her "assertions concerning her ability to work are credible."  (T. at 16.)

In addition to her heel problems, and for purposes of her claim for Disability Benefits, plaintiff asserted that she had the listed impairment of mental retardation.  The required level of severity for this disorder is met if the following requirement is satisfied:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C) (2004).  With respect to IQ testing, the medical evidence contained in the record shows that plaintiff was tested by Joel H. Schorr, Ed.D., a psychologist.  Her verbal IQ score was 63, her performance IQ score was 65, and her full scale IQ score was 61.  (T. at 400.)  The plaintiff also was tested by Kristen Barry, Ph.D., the Commissioner's consultative psychologist.  Dr. Barry reported that plaintiff's scores were verbal

IQ 69, performance IQ 70, and full scale IQ 67.  (T. at 409.)

## III.  DISCUSSION

### A.    Determining Disability

The Social Security Administration ("SSA") has promulgated regulations establishing a

five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2004).  "If

at any step a finding of disability or non-disability can be made, the SSA will not review the

claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 124 S. Ct. 376, 379-80 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R. §§ 404.1520(b), 416.920(b).]  At step two,
> the SSA will find non-disability unless the claimant shows that he
> has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities."
> [20 C.F.R. §§ 404.1520(c), 416.920(c).]  At step three, the agency
> determines whether the impairment which enabled the claimant to
> survive step two is on the list of impairments presumed severe
> enough to render one disabled; if so, the claimant qualifies.  [20
> C.F.R. §§ 404.1520(d), 416.920(d).]  If the claimant's impairment
> is not on the list, the inquiry proceeds to step four, at which the
> SSA assesses whether the claimant can do his previous work;
> unless he shows that he cannot, he is determined not to be disabled.
> If the claimant survives the fourth stage, the fifth, and final, step
> requires the SSA to consider so-called "vocational factors" (the
> claimant's age, education, and past work experience), and to
> determine whether the claimant is capable of performing other jobs
> existing in significant numbers in the national economy.  [20
> C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).]

*Barnhart v. Thomas*, 540 U.S. 20, 124 S. Ct. at 379-80 (footnotes omitted).

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  The ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2004); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *10 (S.D.N.Y. Nov. 14, 2003); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

       With respect to plaintiff's motion for judgment on the pleadings, with remand solely for the calculation of her benefits, the standard is whether "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  On the other hand, with respect to the Commissioner's motion for remand for further administrative proceedings, the standard is whether the Commissioner has made "a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . . ." 42 U.S.C. § 405(g) (2004).

**C.     The Listed Impairment of Mental Retardation**

       Listing 12.05 relates to subaverage intellectual functioning caused by mental retardation,

manifestations of which first appear during a person's "developmental period," *i.e.*, prior to age

twenty-two.  Listing 12.05(C) requires:

> A valid verbal, performance, or full scale IQ of 60 through 70 and
> a physical or other mental impairment imposing an additional and
> significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).  With respect to the first prong of this

requirement, *i.e.*, the IQ score of 60 through 70, it is undisputed that the two psychologists who

tested plaintiff, one of whom was the Commissioner's consultative psychologist, found her to be

in this range in **each** category, *i.e.*, verbal, performance **and** full scale.  Such a score in only **one**

category would suffice: "[i]n cases where more than one IQ is customarily derived from the test

administered, e.g., where verbal, performance, and full scale IQs are provided . . . , we use the

lowest of these in conjunction with 12.05."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c)

(2004).  Dr. Barry's lowest score for plaintiff was 67, well within the range of 12.05(C), whereas

Dr. Schorr's lowest score was 61, which would almost place plaintiff in Listing 12.05(B).

With respect to the second prong of the requirement, *i.e.*, "a physical . . . impairment

imposing an additional and significant work-related limitation of function," the ALJ found the

plaintiff to have a "severe impairment [] . . . [of] bilateral heel spurs."  (T. at 16.)  He also found

as "credible" plaintiff's assertions that pain from the heel spurs prevented her from working.

Given the undisputed evidence concerning the IQ scores,[2] and the ALJ's findings as stated

above (a severe impairment of heel spurs and credible testimony that this prevented the claimant

---

[2] An ALJ is not required to accept a claimant's IQ scores when they are inconsistent with the
record.  *Vasquez-Ortiz v. Apfel*, 48 F. Supp. 2d 250, 257 (W.D.N.Y. 1999).  Here, however, the ALJ's
decision simply ignores the IQ scores; he made no analysis as to whether the scores were inconsistent
with the record.  This Court's review of the record indicates no such inconsistency.

from working) it is inexplicable, to this Court, how the ALJ failed to find that plaintiff had the listed impairment of mental retardation.  "The required level of severity for [mental retardation] **is** met when the requirements in . . . C are satisfied."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (emphasis added).  Yet he found, without any explanation whatsoever and without even specifically referring to Listing 12.05(C), that the plaintiff "has no impairment that meets or equals the criteria of any [listed] impairment."  (T. at 16.)  "Substantial evidence" unquestionably does not support his decision.  *Butts*, 388 F.3d at 384; *see also Ferraris*, 728 F.2d at 587 (the ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision).

**D.      The Appropriate Remedy**

The Commissioner apparently does not disagree with the conclusion that the ALJ's decision is not supported by substantial evidence.  Her proposed remedy, however, is remand for further administrative proceedings primarily with respect to two issues, (1) the intelligence testing of plaintiff since her "culture and background are not principally English-speaking" and (2) whether plaintiff's impairment existed before she was twenty-two years old.  Dkt. No. 10 at 3-5.

**(1)      Non-English Speaking Culture and Background**

Initially, the Court notes, as it did above, that in April, 2001, the Appeals Council sought and obtained a voluntary remand for this very purpose.  The Appeals Council's remand order explicitly focused on the need for further testing and evaluation "in order to determine whether [plaintiff's] language limitations may impact on the IQ scores."  (T. at 247.)  It presumably was for this reason, and with these objectives in mind, that the Commissioner retained Kristen Barry,

7

Ph.D., to conduct a consultative examination of plaintiff.  As discussed above, Dr. Barry's testing

of plaintiff on January 28, 2002, resulted in IQ scores of verbal 69, performance 70, and full

scale 67.  (T. at 409.)  Dr. Barry was aware of plaintiff's cultural and educational history (T. at

407), and with respect to language limitations Dr. Barry explicitly stated: "She had a strong

Italian accent, but her speech and language skills were adequate."  (T. at 408.)

Under these circumstances the Court finds that the Commissioner has not shown "good

cause" for obtaining a second bite at the apple.  In addition, the Commissioner has made no

showing that the evidence she would seek in order to fully develop the record, *e.g.*, "a

consultative examination with an individual qualified by training and experience to perform an

evaluation which takes into consideration plaintiff's social, linguistic and cultural background"

(Dkt. No. 10 at 5) would be "new."  42 U.S.C. § 405 (g) (2004).  Presumably the Commissioner

retained Dr. Barry because she was qualified in these respects given the focus and objectives of

the voluntary remand in 2001.

Furthermore, the Commissioner has made no showing that certain of the evidence she

would seek is "material."  *Id.*  The ALJ's findings satisfy the second prong of Listing 12.05(C)'s

requirements.  The first prong is met by the IQ scores.  Therefore, how would the following,

which the Commissioner would have the ALJ seek on remand, be "material": "medical records,"

"records or opinions from treating sources," and "reports or opinions from other sources"?  The

Commissioner has made no showing of their materiality.

Finally, the Commissioner also argues for remand so that the ALJ can seek "the

assistance of a medical expert" and "can determine that a medical expert is warranted."  Dkt. No.

10 at 4-5.  What specific issue this expert would focus upon, and therefore the materiality of the

8

expert's assistance, is not addressed by the Commissioner.  In addition, here too the Appeals

Council's remand order of September 18, 2001, explicitly suggested that "medical expert

testimony be obtained."  (T. at 247.)

In summary, the Commissioner has not shown that her proffered evidence is "new" or

"material," nor has she shown "good cause for the failure to incorporate such evidence into the

record in a prior proceeding."  42 U.S.C. § 405 (g).  *See also Tirado v. Bowen*, 842 F.2d 595, 597

(2d Cir. 1988); *Lisa v. Secretary of the Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d

Cir. 1991).

### (2)    Mental Retardation as of Age 22

The Commissioner argues, correctly, that section 12.05(C) requires "deficits in adaptive

functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates

or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

The Commissioner then contends that the evidence in the record is insufficient in terms of this

requirement.

Initially the Court notes that this requirement of onset before age twenty-two, like the

issue of plaintiff's non-English speaking culture and background, was explicitly addressed in the

Appeals' Council's remand order of September 18, 2001 ("[T]here is no evidence showing

deficits in adaptive behavior initially manifested during the developmental period (before age

22)").  (T. at 246.)  The Commissioner has not shown "good cause" for obtaining a second bite of

the apple on this issue as well.

In addition, evidence in the record supports the inference that plaintiff's mental

retardation had developed prior to age twenty-two.  For example, she repeated the first grade four

times, and dropped out of school at the sixth grade level.  It strikes the Court as wildly

speculative, if not incredible, for the Commissioner to imply that records of early intelligence

testing or other school records might be obtained, a quarter-century after the fact, from Italy.  In

any event, if such records existed, were obtainable, and were probative, the Commissioner could

have presented them to this Court with her motion.

Finally, the Court agrees with those authorities who have found that, absent evidence to

the contrary, "it is appropriate to assume that [a person's] IQ has not changed since his twenty-

second birthday." *Vasquez-Ortiz v. Apfel*, 48 F. Supp. 2d at 257; *see also Rivera v. Apfel*, Civ.

No. 98-0619, 2000 WL 1568596, at *3 (W.D.N.Y. Sept. 29, 2000) and *Holmes v. Apfel*, Civ. No.

98-5087, 1999 WL 731769, at *5 (N.D. Ill. Aug. 31, 1999).

## IV.  CONCLUSION

The Court finds that remand solely for calculation of benefits is the appropriate remedy.

The record here, for the reasons stated in part "III.C" above, provides clearly persuasive proof

that plaintiff has the listed impairment of mental retardation as defined in section 12.05(C).  The

Court also finds, for the reasons stated in part "III.D" above, that no purpose would be served by

another remand, the objectives of which would be the same as the prior remand, and that the

Commissioner has not met the "triple standard" (*Tirado*, 842 F.2d at 597) for the introduction of

additional evidence upon remand.  In this regard the Court also is mindful that plaintiff began

this quest for benefits approximately eight years ago.  *See Rivera v. Sullivan*, 923 F. 2d at 970 (as

a factor, "the length of time this litigation already has consumed"); *Carroll v. Secretary of Health

and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) (acknowledging "Congress' mandate to

foreshorten the often painfully slow process by which disability determinations are made"); and

*Rivera v. Apfel*, 2000 WL 1568596, at *4 (concern regarding "further delay [to] already lengthy administrative proceedings").

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that the Commissioner's decision denying benefits as of September 16, 1996, is **REVERSED**; and it is further

**ORDERED**, that this case is **REMANDED** to the Commissioner solely for calculation of benefits consistent with this Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on the parties.

Dated: May 6, 2005
      Syracuse, New York

George H. Lowe
United States Magistrate Judge